STATE of Tennessee, Plaintiff-Appellee,

v.

Gary Bradford CONE,
Defendant-Appellant.

Supreme Court of Tennessee.

Jan. 23, 1984.

William M. Leech, Jr., Atty. Gen. and Reporter Gordon W. Smith, Asst. Atty. Gen., Nashville, for plaintiff-appellee.

John C. Dice, April Ferguson, Memphis, for defendant-appellant.

## OPINION

HARBISON, Justice.

Appellant was convicted of murder in the first degree and murder in the perpetration of a burglary in connection with the homicides of an elderly couple, Shipley O. Todd and his wife Cleopatra Todd, in Memphis on August 10, 1980. He was also convicted of three charges of assault with intent to commit murder in the first degree upon three other persons and of robbery by use of deadly force upon a fourth. All of these offenses were shown to have occurred on August 9, 1980.

We have reviewed the evidentiary record and the numerous issues presented on appeal by counsel for appellant. We find none of these issues sufficient to warrant reversal of any of the convictions, and all of them are affirmed.

■ Appellant was sentenced to life imprisonment for the armed robbery and for a term of years upon each of the assault charges. He was given the death penalty for each of the two murders. The record clearly warrants imposition of the death penalty under the circumstances of these homicides, and it could in no sense be deemed to be disproportionate, in our opinion.

The homicides were the climax of a series of criminal episodes commencing on August 9, 1980, when appellant robbed a jewelry store in Memphis of approximately $112,000 worth of expensive watches, rings and other jewelry. The manager of the jewelry store gave a description to the police, and an officer in an unmarked cruiser saw appellant driving his 1972 gray oldsmobile a short time after the robbery. He followed appellant at a normal speed, but the latter, apparently becoming alarmed, accelerated in an effort to escape. A high-speed chase ensued through mid-town Memphis and into a residential neighborhood. There appellant abandoned his automobile. He shot one of the police officers who attempted to arrest him, shot a citizen, John Clark, who challenged him, and drew a gun on a third citizen, demanding that the latter give appellant his automobile. The owner of the automobile fled, and appellant snapped his pistol several times, his ammunition having been exhausted. He not only threatened the owner of the automobile, but apparently was snapping his pistol at a police helicopter which was flying over the area to assist in his apprehension. Appellant eluded police during the afternoon of August 9, a Saturday. Early on the next morning, in the same neighborhood, he appeared at the door of a resident, Lucille Tuech. When she refused him admittance to make a telephone call, he drew a pistol on her. Later that afternoon he entered the home of Mr. and Mrs. Todd, which was located a very short distance from the apartment house where Ms. Tuech lived and in the same residential area where the other shootings had occurred.

Mr. Todd was 93 years of age; his wife was 79. She had gone to church on the morning of August 10 and had returned. Apparently she had eaten a meal. At some time in the afternoon appellant entered the home, breaking a latch on the rear door. The bodies of both victims were found horribly mutilated and cruelly beaten three days later upon investigation instituted by anxious relatives. Appellant's fingerprints and hair samples were found in the home, which had been ransacked, and he apparently was able to steal enough money or other valuables from the home to fly from Memphis to Florida, where he appeared at the home of an acquaintance on August 12.

■ Appellant from the beginning has admitted committing the homicides and the other crimes involved. The only defense interposed on his behalf was that of insanity, or lack of mental capacity, due to drug abuse and to stress arising out of his previous service in the Vietnamese war, some eleven years prior to the events involved in this case. This proved to be a tenuous defense, at best, since neither of the expert witnesses who testified on his behalf had ever seen or heard of him until a few weeks prior to the trial. Neither was a medical doctor or psychiatrist, and neither had purported to treat him as a patient. Their testimony that he lacked mental capacity was based purely upon his personal recitation to them of his history of military service and drug abuse. A psychiatrist and a psychologist examined him upon orders of the trial court, and neither of them found any evidence of a stress syndrome or of excessive drug abuse. Lay witnesses who saw him at or about the time of the homicides contradicted his statements to his expert witnesses as to the degree and extent of his drug abuse. The jury was clearly warranted in finding that appellant was not insane at the time of the criminal episodes involved here on August 9 and August 10, 1980.

The jewelry store robbery was apparently planned well in advance. On August 8, 1980, appellant stole a Tennessee license plate from a Memphis resident. He appar-

ently taped this over the Arkansas plate on the rear of his vehicle, but later it was found inside his automobile after he had removed it. He changed clothes after the robbery and was dressed in a different costume at the time of the subsequent police chase. After the murders he shaved his beard and altered his appearance considerably. He had capacity obviously to book plane flights from Memphis to Birmingham and thence to Florida. A lady acquaintance with whom he stayed in Florida and who had known him for several months prior to the crimes involved here testified that he had not used drugs excessively during the times when he was with her, nor did he appear to be experiencing withdrawal symptoms or using drugs when he returned to Florida on August 12, 1980. A police officer who examined him in Florida and took hair samples from his body said that there were no visible needle marks or other external evidences of drug abuse on appellant's body.

All of the items taken by appellant in the jewelry store robbery were found in his abandoned automobile, together with some $2,400 in cash and a very large quantity of contraband controlled substances.

█ We do not deem it necessary to dwell further upon the factual background of the case, because the evidence is overwhelmingly sufficient to sustain the convictions on all of the charges. Indeed, as previously stated, appellant has admitted guilt of all of them, but has denied responsibility solely on the basis of lack of mental capacity. It was stipulated that there was no issue of self-defense in connection with the deaths of the Todds, both of whom were repeatedly beaten about the head until they died. Defensive wounds appeared on the arms and hands of both of them, and the bodies had apparently been moved or dragged to points inside the house where they would not be visible from either the front or the rear door. Appellant made a telephone call from the residence of the Todds to his sister in Chicago at 3:45 on August 10, 1980. In addition he gave the following information to one of his expert witnesses in undertaking to explain the homicides:

"He described that he was at their house with the agenda of getting cleaned up, getting fed, so that he could flee the area. And in the course of his time there they ceased to cooperate with him, and he started to try to control them physically to cooperate, and that's all the detail I have. He has no more recollection of specifics after that.

"Q. But there's no question that he told you that he did kill those two old people?

"A. That's what he told me, yes.

"Q. And they ceased to cooperate with him, is that what you said he told you. Right?

"A. They became frightened, and that was not what he wanted them to do."

Other testimony indicated that the police had combed the area in which the Todds lived and in which the other shootings had occurred on Saturday afternoon, and that appellant had apparently concealed himself from them. They had even used tear gas on an abandoned residence in an effort to find him. There can be no question but that his killing of the Todds was in furtherance of his effort to escape from the crimes which he had committed on the previous day.

Appellant was thirty-three years of age. He was an honor graduate of the University of Arkansas and shortly before the events in question here had been accepted for admission into law school, scoring in the ninety-sixth percentile on a law school admission test. He had served in the armed forces from 1966 through 1969, and had one year's service in Viet Nam as a supply sergeant. He had received a bronze star for his service there and had been honorably discharged from the army. He went to college after his discharge. In 1972, however, after graduating from college, he was convicted of three separate armed robberies in Oklahoma, these covering a period from December 1971 through May 1972. He had been imprisoned in Oklahoma until the latter part of 1979. He had then returned briefly to his home in Arkansas and

had gone to Hawaii for a time. The vehicle which he was driving on August 9, 1980 had originally been registered in his name, but was registered in the name of his mother on that date.

■ Appellant offered the testimony of two witnesses in support of his defense of lack of mental competence.[1] The first of these was Dr. Matthew Jaremko, a clinical psychologist at the University of Mississippi. He had interviewed appellant on two occasions for a total of about six hours, beginning in February 1982, less than two months prior to the trial. It was the opinion of Dr. Jaremko that appellant was suffering from post-traumatic stress disorder as a result of his experiences in Viet Nam, and that upon this was superimposed a serious drug-abuse disorder. Dr. Jonathan Lipman, a neuro-pharmacologist, testified that appellant, in his opinion, suffered from "chronic amphetamine psychosis" as a result of serious drug abuse. As previously stated, neither of these witnesses had ever known or treated appellant prior to the early part of 1982, and both of them based their testimony entirely upon what he told them as to the extent of his ingestion or injection of drugs. Not only was the weight of their testimony a question for the jury, but appellant's known pattern of conduct immediately before and immediately after the events in question here raised serious doubts as to the accuracy of their opinions, because he did not appear to be seriously under the influence of or experiencing withdrawal from drugs according to the testimony of several witnesses who saw him during August 1980. In addition, as previously pointed out, the State offered two witnesses whose qualifications equalled or exceeded those of appellant's experts, and neither of the State's expert witnesses found any basis for an insanity defense.

Counsel for appellant, who conducted the defense and has pursued the appeal in this case most diligently, has raised numerous issues for our consideration. After carefully considering them, however, we are of the opinion that none of them warrant our interference with the jury verdict and the judgment of the trial court rendered thereon. In addition to overruling the issues presented as to the sufficiency of the evidence, we will comment briefly upon the other issues raised on appeal, although not necessarily in the order presented in the briefs.

■ Appellant has assigned error upon the failure of the trial court to grant individual *voir dire* of a juror, Floreine C. Dragon. This juror indicated that she was taking some medication at the time of the trial. Defense counsel requested that the other prospective jurors be sequestered so that he could examine the juror individually and avoid embarrassing her. The trial court denied this request, and we are of the opinion that this ruling was within his discretion. There was nothing necessarily embarrassing in questioning the juror about her medication as a part of the group. She apparently served on the jury without difficulty or incident. At one point during the trial she was questioned privately, as were other jurors, concerning some newspaper materials which had been furnished to the jury during a weekend recess. Nothing in her testimony at that time or in any post-trial affidavit indicates that she was not competent to serve as a juror or that appellant was prejudiced in any way by the ruling of the trial judge with respect to her *voir dire* examination.

■ Error is also assigned on the *voir dire* examination of five other persons who were excused by the trial judge for cause when they expressed irrevocable and unconditional refusal to consider the imposition of the death penalty. We have reviewed carefully the examination of each of these prospective jurors, and in our opinion the trial judge acted properly in excusing them. *See Houston v. State,* 593 S.W.2d 267, 272 (Tenn.1980).

---

**1.** Other than claiming his constitutional right to remain silent, appellant did not testify at either the guilt or the sentencing phase of the trial.

During a weekend recess of the lengthy trial, a court officer furnished members of the jury with a Sunday newspaper. He had clipped from this all news stories which he observed concerning the trial and its incidents. However, in the sports section, there was a story about one of the witnesses who had been shot by appellant on August 9, 1980. In a magazine story there was also a brief reference to a double murder of an elderly couple in mid-town Memphis. This was merely a passing reference which did not refer to the names of the victims or of appellant.

The trial judge conducted an individual examination of the jurors on their exposure to the magazine article. Only one juror had even read that article, and none of the jurors had read anything in the newspaper which they associated in any way with the case on trial. They were not separately examined about the article on the sports page, but apparently none of them had taken note of it or were affected by it in any way. In all events, that article simply recounted the testimony of a witness, John Douglas Clark, who had testified on the previous Friday. It contained nothing with which the jurors were not already fully familiar. We find no error in connection with the ruling of the trial judge and agree that a mistrial was not justified upon the basis of these news items.

A number of issues are presented concerning rulings made by the trial judge during the course of the trial. One of these involved an objection by counsel for appellant to the cross-examination of Dr. Lipman. That witness testified that all he knew about appellant's history was what appellant had told him. He admitted on cross-examination that if appellant had given different information to other doctors, this might affect his opinion. Apparently appellant did give other information to the State's expert witnesses, or they obtained other information independently, because their opinions differed greatly from that expressed by Dr. Lipman. The cross-examination was properly permitted. Further, the trial judge properly allowed the expert witnesses called by the State to testify concerning statements made to them by the accused with reference to his use of drugs. Neither witness quoted any incriminating statements by appellant, insofar as the facts of the case were concerned. At two points in the record references were made to the fact that these witnesses had examined appellant upon orders of the court. We find no statement, however, that they were "the Court's doctors," as alleged in the brief of appellant. The issue is without merit.

Equally without merit is the contention that the trial judge permitted three witnesses to testify for the State on rebuttal. It was insisted by appellant that these witnesses should have been offered during the State's presentation in chief. All of them, however, directly and sharply contradicted the contention of appellant that he was "out of his mind" as a result of drug abuse on the weekend in question, and that he was experiencing severe and extreme symptoms of drug withdrawal after the crimes for which he was on trial.

Error is assigned upon the admission of photographs of the homicide victims. The trial judge excluded all photographs which showed the facial features of the two deceased persons in any detail. The photographs which were admitted simply showed portions of the house, and in some of them the bodies of the victims could be seen, but none of the photographs was gruesome nor did the prejudicial effect of any outweigh its probative value.

Counsel for appellant insists that the prosecuting attorney made an improper reference to a motion *in limine* which had been ruled upon by the trial judge. That motion involved some of the photographs just discussed. When counsel for the prosecution reached the point in trial when he wished to introduce photographs of the Todd residence, he mentioned to the court that he was coming to material which had been the subject of the pre-trial motion. At that point the judge excused the jury. The conduct of counsel for the prosecution

was entirely proper. There was no attempt to suggest to the jury what the subject of the pre-trial motion had been or the ruling of the court thereon. The assignment is overruled.

■ There are numerous other assignments in which counsel for appellant insists that the prosecuting attorneys were guilty of improper conduct in the presence of the jury. We have examined each of these, and find none of them to warrant reversal. One improper remark was made, as to which the trial judge offered to give curative instructions to the jury. Counsel for appellant declined these. In our opinion no remarks made during the course of the trial concerning counsel for either side could possibly have affected the results. The same is true with respect to alleged improper argument by counsel for the State. One or two brief comments were made in the heat of argument which probably should not have been made, but these either were not objected to at the time or were legitimate inferences to be drawn from the proof. We accordingly overrule issues two, three and six as presented in appellant's brief.

■ We find no merit to the assertion by appellant that the indictments in this case were insufficient and find no error with respect to the jury instructions. Likewise we find without merit the insistence that the State failed properly to produce witness statements for use by counsel for appellant on cross-examination. The State produced all of the statements which it had. The reference by counsel for appellant simply has to do with some summaries of witness interviews made in a general police report. There is no showing that any of the witnesses referred to ever saw or adopted any of the materials contained in this report. Issues seven, fourteen and fifteen are overruled.

■ We find no substance to the contention that the State was guilty of improper or selective prosecution in this case by not offering a life sentence to the accused in pretrial negotiations. We also overrule

four issues addressed to the alleged invalidity of the death penalty in this state. All of these contentions have been considered in depth by this Court in numerous reported decisions, and they do not warrant further discussion here. *See generally State v. Austin*, 618 S.W.2d 738 (Tenn.1981); *State v. Pritchett*, 621 S.W.2d 127 (Tenn. 1981); *Houston v. State*, 593 S.W.2d 267 (Tenn.1980).

The final issue presented by appellant is whether a new sentencing hearing is justified because of insufficiency of the evidence to support one of the aggravating circumstances found by the jury. After careful consideration we are of the opinion that if any error was committed by the jury, it was harmless beyond a reasonable doubt in view of multiple aggravating circumstances which were clearly established.

In the guilt phase of the case the jury found that appellant was guilty of murder in the first degree as a matter of common law and also of felony-murder in the perpetration of burglary. The latter, in itself, is one of the statutory aggravating circumstances warranting the death penalty. T.C.A. § 39–2–203(i)(7). In reporting aggravating circumstances at the end of the sentencing hearing, however, the jury did not repeat this particular circumstance although it is abundantly established by the evidence. The jury did find, however, three other aggravating circumstances which were clearly shown by the evidence. The first of these was that the accused had previously been convicted of one or more felonies involving the use or threat of violence to the person. T.C.A. § 39–2–203(i)(2). As mentioned previously, it was proved that appellant had been convicted of three separate armed robberies in Oklahoma in 1982.

■ The jury also found that the murders in question were especially heinous, atrocious, or cruel in that they involved torture or depravity of mind as provided in T.C.A. § 39–2–203(i)(5). The evidence abundantly established that both of the elderly victims had been brutally beaten to death by multiple crushing blows to the

skulls. Blood was spattered throughout the house, and both victims apparently had attempted to resist, because numerous defensive wounds were found on their persons. The only excuse offered in the entire record for this unspeakably brutal conduct by the accused was that these elderly victims had at some point ceased to "cooperate" with him in his ransacking of their home and in his effort to flee from arrest. As previously stated, it was stipulated by counsel for appellant that there was no issue of self-defense even remotely suggested. The deaths of the victims were not instantaneous, and obviously one had to be killed before the other. The terror, fright and horror that these elderly helpless citizens must have endured was certainly something that the jury could have taken into account in finding this aggravating circumstance.

▪▪▪ The jury also found that the accused committed the murders for the purpose of preventing a lawful arrest or prosecution, an aggravating circumstance specified in T.C.A. § 39–2–203(i)(6). This circumstance was established not only by the testimony of police officers but by appellant's own statement to his expert witnesses.

It thus appears that four aggravating circumstances were indisputably established by the record, and three of these were reported by the jury at the end of the sentencing hearing. The jury also reported another aggravating circumstance, T.C.A. § 39–2–203(i)(3) as follows:

"The defendant knowingly created a great risk of death to two (2) or more persons, other than the victim murdered, during his act of murder ...."

It is clear from the record that on the afternoon of August 9, 1980, the accused shot two persons and attempted to shoot a third in escaping from an armed robbery after a high-speed automobile chase. On the next morning he terrorized Ms. Teuch and some hours later killed Mr. and Mrs. Todd. There is considerable logic and plausibility to the finding of the jury that the acts of murder were committed during the course of an attempted escape from this crime spree, and certainly more than two persons were in danger.

▪▪▪ We are of the opinion, however, that generally the statute does not contemplate an extended criminal episode, but contemplates either multiple murders or threats to several persons at or shortly prior to or shortly after an act of murder upon which the prosecution is based.[2] We are therefore doubtful that the record in the present case sustains the jury verdict as to this aggravating circumstance. Nevertheless, where three others were clearly found by the jury and the record demonstrates a fourth, we are of the opinion that the jury finding with respect to this aggravating circumstance, if erroneous, was harmless beyond a reasonable doubt and does not warrant the granting of a new sentencing hearing. In this respect, the case differs markedly from *State v. Pritchett*, 621 S.W.2d 127 (Tenn.1981), in which there were only two aggravating circumstances found and the evidence did not support one of these. In the recent case of *State v. Workman*, ·667 S.W.2d 44 (Tenn.1984), the Court upheld a death sentence where there was some question as to one of the aggravating circumstances found by the jury. The Court found that the validity of the sentence would not be affected even if the jury had erred as to one circumstance where numerous others were clearly established.

Pursuant to T.C.A. § 39–2–205 we have reviewed the sentence of death in this case and are of the opinion that it is not in any way disproportionate under all of the circumstances, including the brutal murders of two elderly defenseless persons by an

---

**2.** There could be situations where substantial periods of time might be involved, such as in the taking of hostages or the hijacking of a plane or other vehicle. It is unnecessary here to attempt to define all possible fact situations which might be covered by this statute. It was held applicable in *State v. Workman*, 667 S.W.2d 44 (Tenn.1984) where an escaping robber killed one police officer and fired at two others.

escaping armed robber who had terrorized a residential neighborhood for twenty-four hours.

The judgment and sentence are affirmed at the cost of appellant. Unless otherwise ordered by this Court or other proper authority, the sentence will be carried out as provided by law on June 29, 1984.

Justice Brock concurs in affirming the conviction in this case but dissents with respect to the imposition of the death penalty for reasons stated in his dissenting opinion in *State v. Dicks*, 615 S.W.2d 126, 132 (Tenn.1981).

FONES, C.J., and COOPER and DROWOTA, JJ., concur.

BROCK, J., partial dissent.